**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PAVANI TALBOT,**

**Plaintiff,**

**v.** **Case No.**

**TRELLA HEALTH, LLC,**

**Defendant.**
______________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Pavani Talbot ("Plaintiff"), by and through undersigned counsel, herby sues Trella Health, LLC ("Defendant") and in support of states as follows:

## NATURE OF ACTION

1. This is an action for monetary damages, costs, and reasonable attorney's fees to redress Defendant's violations of Plaintiff's rights under the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 *et seq.* ("FCRA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under ADA and the ADEA.

3. This Court has supplemental jurisdiction over Plaintiff's claims arising from the FCRA pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

5. Plaintiff is a resident of Sarasota County, Florida.

6. Plaintiff worked for Defendant in Sarasota County, Florida.

7. Upon information and belief, Defendant is a limited liability company organized under the laws of Delaware, with its principal place of business located in the state of Georgia.

8. At all times during Plaintiff's employment with Defendant, Plaintiff was considered an "employee" within the meaning of the FCRA, the ADA and the ADEA.

9. At all times during Plaintiff's employment with Defendant, Defendant was considered an "employer" within the meaning of the FCRA, the ADA and the ADEA.

10. Plaintiff was disabled as defined by the ADA during her employment with Defendant and at the time of her termination by Defendant.

11. Plaintiff had a handicap as defined by the FCRA during her employment with Defendant and at the time of her termination by Defendant.

12. Defendant knew of Plaintiff's disability and handicap during her employment with Defendant and at the time of her termination by Defendant.

13. Plaintiff was a qualified individual as defined by the FCRA and the ADA during her employment with Defendant.

14. At all times mentioned herein, before and after, the persons responsible for perpetrating discriminatory actions against Plaintiff were agents and/or employees of the Defendant and were at all times acting within the scope and course of their agency and/or employment, and/or the actions were expressly authorized by the Defendant and/or their actions were ratified by the Defendant, thus making the Defendant liable for said actions.

## PROEDURAL REQUIREMENTS

15. Plaintiff timely dual-filed a charge ("Charge") of discrimination against the Defendants with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission ("EEOC").

16. On August 17, 2026, the EEOC issued a Determination and Notice of Rights letter for the Charge filed against the Defendant.

17. This complaint was filed within ninety (90) days of receipt of the letters.

## STATEMENT OF FACTS

18. In or around September 2024, Plaintiff interviewed with Defendant's Human Resources Representative Barrett Gaines ("Ms. Gaines").

19. During the interview, Ms. Gaines inquired as to why Plaintiff had a gap her resume.

20. Plaintiff informed Ms. Gaines that at that time, her mother was approaching the end of her life and Plaintiff wanted to be able to spend as much time as possible with her mother before she passed.

21. Additionally, Plaintiff informed Ms. Gaines that in or around early 2023, Plaintiff was diagnosed with long covid[1] and that the illness had caused her to take significant time away from work to recover.

22. During her employment with Defendant and at the time of her termination by Defendant, Plaintiff's long covid substantially limited her ability to breathe.

23. Plaintiff began her employment with Defendant on or around on October 21, 2024, as its Director of Product Management, Integrations.

24. Shortly after beginning her employment with Defendant, in or around late December 2024, Plaintiff began to suffer from complications due to her long covid disability.

---

[1] *See* https://archive.cdc.gov/#/details?url=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Flong-term-effects%2Findex.html (last visited November 9, 2026).

25. On or around December 20, 2024, Plaintiff contacted her supervisor, Kathy Ford ("Ms. Ford") to inform her of her disability and to request six (6) days of leave to care for her own disability.

26. Instead of accommodating her leave request, Ms. Ford retaliated against Plaintiff by assigning Plaintiff an extensive list of deliverables (board presentation, vendor strategy, integration priorities, pre-sales documentation) to be completed by unreasonable date of December 26, 2024.

27. Ms. Ford continued to retaliate against Plaintiff for requesting leave by continuing to place unrealistic deadlines on Plaintiff.

28. Namely, on or around January 10, 2025, Plaintiff was given less than two hours to complete a product roadmap for an upcoming CES conference.

29. This last-minute demand caused extreme stress and overwork while Plaintiff was still trying to recover.

30. Further, around this time, Ms. Ford effectively demoted Plaintiff and required her to start reporting to Anthony Trosky ("Mr. Trosky"), many decades younger than Plaintiff.

31. Ms. Ford repeatedly made remarks suggesting that Plaintiff was older and slower than the other Directors and that Plaintiff needed to "keep up" [with the 30-year-olds] and that Plaintiff had "been around the block" many times.

32. In multiple meetings, Ms. Ford contrasted Plaintiff with other younger and non-disabled Directors, Mr. Trosky and Meredith (last name unknown), by holding up their stamina and speed as the standard Plaintiff should meet, despite Plaintiff's extensive expertise and contributions.

33. In team meetings, Ms. Ford referred to younger employees as "high-energy" and "future leaders" while describing Plaintiff as slow and not adaptable.

34. Ms. Ford painted Plaintiff as an old, sickly, and slow employee.

35. On or around January 13, 2025, Mr. Trosky was told to kick-off a Quarterly Rock project that assigned a huge amount of work directly to Plaintiff and was more work than could be done in a 40- hour week.

36. In addition, this team tried to change Plaintiff's due dates for some of these deliverables to claim Plaintiff was late with specific deliverables when she was not.

37. Younger employees were spared these most burdensome assignments and were instead given higher visibility, more collaborative projects, while Plaintiff was isolated with overwhelming and unreasonable tasks and deadlines.

38. Plaintiff was deliberately excluded from critical conversations, solution meetings, and communications necessary to perform her role effectively.

39. Meanwhile, younger employees were included and empowered.

40. Plaintiff was denied opportunities to present directly to leadership or executives, while her work was redirected through others, preventing her from receiving credit or visibility.

41. The tremendous workload and added stress did not provide Plaintiff any opportunity to recover from the aforementioned complications.

42. By late January 2025, Plaintiff required emergency care for further complications because of her disability.

43. This was a direct consequence of Plaintiff being previously denied adequate recovery time by Ms. Ford.

44. Plaintiff required three (3) more urgent care visits due to allergic reactions to the medication and her disability worsening.

45. Any time Plaintiff required an accommodation to miss work, Ms. Ford began publicly ostracizing her by eliminating her from important meetings, emails and Slack conversations.

46. On or around March 28, 2025, Plaintiff was informed by Defendant that she was being terminated.

47. At the time of termination, Plaintiff was sixty-two (62) years old and disabled.

48. Upon information and belief, Plaintiff was replaced with someone substantially younger than her and non-disabled.

49. Further, Defendant did not follow their progressive disciplinary policy prior to terminating Plaintiff.

50. Additionally, Plaintiff was told that the effective date of her termination would be April 1, 2025, so that she could continue to receive medical insurance through the end of April 2025.

51. Subsequently, Plaintiff's medical insurance was ended prematurely, and she incurred significant costs to treat her disability.

52. Plaintiff has satisfied all conditions precedent, or they have been waived.

53. Plaintiff has retained the undersigned the undersigned attorney and agreed to pay him a fee.

## **CLAIMS FOR RELIEF**

### **Count I – Discrimination in violation of the FCRA**

54. All allegations prior to Count I are reallaged and incorporated herein.

55. At all times relevant to this action, Plaintiff was a qualified individual with a handicap within the meaning of the FCRA in that Plaintiff was capable of performing all essential functions of her employment position with or without a reasonable accommodation.

56. Plaintiff had an actual handicap during her employment with Defendant and had an actual handicap at the time of her termination with Defendant.

57. Defendant terminated Plaintiff because of her handicap.

58. Defendant's termination of Plaintiff because of her handicap constitutes discrimination against Plaintiff with respect to the terms, privileges, conditions of her employment.

59. As a direct and proximate cause of Defendant's intentional unlawful termination of Plaintiff, she has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

**Count II – Failure to accommodate in violation of the FCRA**

60. All allegations prior to Count I are reallaged and incorporated herein.

61. At all times relevant to this action, Plaintiff was a qualified individual with a handicap within the meaning of the FCRA in that Plaintiff was capable of performing all essential functions of her employment position with or without a reasonable accommodation.

62. Plaintiff had an actual handicap during her employment with Defendant and had an actual handicap at the time of her termination with Defendant.

63. Plaintiff requested leave as an accommodation due to her own handicap on or around December 20, 2024.

64. Defendant failed to accommodate Plaintiff's leave request.

65. By failing to accommodate Plaintiff's leave request, and by terminating her employment, Defendant failed to accommodate Plaintiff.

66. As a direct and proximate cause of Defendant's intentional failure to accommodate Plaintiff, she has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

**Count III – Retaliation in violation of the FCRA**

67. All allegations prior to Count I are reallaged and incorporated herein.

68. Plaintiff engaged in protected activity by requesting a reasonable accommodation.

69. Defendant retaliated against Plaintiff by assigning Plaintiff an extensive list of deliverables, giving her unrealistic deadlines, and by terminating her employment.

70. As a direct and proximate cause of Defendant's intentional retaliation, Plaintiff has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

**Count IV– Discrimination in violation of the ADA**

71. All allegations prior to Count I are reallaged and incorporated herein.

72. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA in that Plaintiff was capable of performing all essential functions of her employment position with or without a reasonable accommodation.

73. Plaintiff had an actual disability during her employment with Defendant and had an actual disability at the time of her termination with Defendant.

74. Defendant terminated Plaintiff because of her disability.

75. Defendant's termination of Plaintiff because of her disability constitutes discrimination against Plaintiff with respect to the terms, privileges, conditions of her employment.

76. As a direct and proximate cause of Defendant's intentional unlawful termination of Plaintiff, she has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

**Count V – Failure to accommodate in violation of the ADA**

77. All allegations prior to Count I are reallaged and incorporated herein.

78. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA in that Plaintiff was capable of performing all essential functions of her employment position with or without a reasonable accommodation.

79. Plaintiff had an actual disability during her employment with Defendant and had an actual disability at the time of her termination with Defendant.

80. Plaintiff requested leave as an accommodation due to her own disability.

81. Defendant failed to accommodate Plaintiff's leave request.

82. By failing to accommodate Plaintiff's leave request, and by terminating her employment, Defendant failed to accommodate Plaintiff.

83. As a direct and proximate cause of Defendant's intentional failure to accommodate Plaintiff, she has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

**Count VI – Retaliation in violation of the ADA**

84. All allegations prior to Count I are reallaged and incorporated herein.

85. Plaintiff engaged in protected activity by requesting a reasonable accommodation.

86. Defendant retaliated against Plaintiff by assigning Plaintiff an extensive list of deliverables, giving her unrealistic deadlines, and by terminating her employment.

87. As a direct and proximate cause of Defendant's intentional retaliation, Plaintiff has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

**Count VII – Discrimination because of age in violation of the FCRA**

88. All allegations prior to Count I are reallaged and incorporated herein.

89. Plaintiff was sixty-two years old at the time of her unlawful termination.

90. Defendant terminated Plaintiff because of her age.

91. Upon information and belief, Plaintiff's position was replaced by a substantially younger employee.

92. As a direct and proximate cause of Defendant intentional unlawful treatment of Plaintiff, including her unlawful termination, Plaintiff has been damaged and is entitled to relief set forth in the Prayer for Relief below.

**Count VIII – Discrimination because of age in violation of the ADEA**

93. All allegations prior to Count I are reallaged and incorporated herein.

94. Plaintiff was sixty-two years old at the time of her unlawful termination.

95. Defendant terminated Plaintiff because of her age.

96. Upon information and belief, Plaintiff's position was replaced by a substantially younger employee.

97. As a direct and proximate cause of Defendant intentional unlawful treatment of Plaintiff, including her unlawful termination, Plaintiff has been damaged and is entitled to relief set forth in the Prayer for Relief below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests:

(a) That process issue and that this Court take jurisdiction over the case;

(b) Judgement against Defendants in the amount of Plaintiff's back wages and back benefits, commissions, bonuses, front-pay and front benefits, compensatory damages, including emotional distress damages, liquidated damages, punitive damages, declaratory relief, injunctive relief and prejudgment interest thereon;

(c) All costs and reasonable attorney's fees in litigating this matter (including expert fees); and

(d) For such further relief as this Court deems just and equitable.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully submitted this 10th day of November 2026 by:

/s/ Jason B. Woodside
Jason B. Woodside, Esq.
FL Bar No. 104848
Woodside Law, P.A.
100 South Ashley Drive
Suite 600
Tampa, FL 33602
T: (813) 606-4872
F: (813) 333-9845
Email: Jason@woodsidelawpa.com
*Lead Counsel for Plaintiff*